1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALESIA ANN PHILLIPS,                        No.  2:18-cv-02307-MCE-KJN

12                  Plaintiff,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL                      (ECF Nos. 16, 22)
     SECURITY,
15
                   Defendant.
16

17         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Social Security Benefits.[1]  In her summary judgment motion, plaintiff

19   contends the Administrative Law Judge ("ALJ") erred by failing to consider plaintiff's dyslexia,

20   failing to provide clear and convincing reasons to discredit plaintiff's pain testimony, and failing

21   to develop the vocational expert's ("VE") testimony.  (ECF No. 16.)  The Commissioner filed an

22   opposition and cross-motion for summary judgment.  (ECF No. 22.)  For the reasons set forth

23   below, the undersigned RECOMMENDS DENYING plaintiff's motion, GRANTING the

24   Commissioner's motion, and AFFIRMING the decision of the ALJ.

25   ////

26   ////

27   _____

28   [1] This action was referred to the undersigned for resolution as findings and recommendations, pursuant to Local Rule 302(c)(15).

1

## I.   BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

2

On March 13, 2015, plaintiff filed a claim for disability, alleging an onset date of October

3

13, 2013.  (See Administrative Transcript ("AT") 168, 189.)  Plaintiff listed the following

4

medical conditions on her application:  back surgery, discectomy 14-15, and depression.  (AT

5

193.)  Plaintiff's application was denied initially and again upon reconsideration.  (AT 95-99,

6

101-05.)  With the aid of an attorney, plaintiff subsequently sought review of these denials from

7

an ALJ.  (AT 106-07.)  At the June 29, 2017 hearing, plaintiff testified about her conditions, and

8

the ALJ heard testimony from a vocational expert regarding plaintiff's employment prospects.

9

(AT 33-66.)

10

On November 14, 2017, the ALJ issued a decision unfavorable to plaintiff.  (AT 15-26.)

11

At Step One the ALJ found that plaintiff had not engaged in gainful activity since October 13,

12

2013, plaintiff's alleged onset date.  (AT 17.)  At Step Two the ALJ found plaintiff's following

13

impairments severe:  degenerative disc disease of the lumbar spine, adjustment disorder,

14

depression, and anxiety.  (Id.)  However, the ALJ determined at Step Three that plaintiff's

15

impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.

16

(AT 19, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.)

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:

   **Step One**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
   **Step Two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
   **Step Three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
   **Step Tour**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
   **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to Step Five. Id.

1    The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light

2    work, except that she should avoid unprotected heights and dangerous moving machinery.  (AT

3    20.)  The ALJ additionally found that plaintiff could "perform routine, repetitive tasks exercising

4    only simple work-related judgments and decisions[.]"  (Id.)  In reaching this conclusion, the ALJ

5    stated he considered plaintiff's symptom testimony and the objective medical evidence in the

6    record.  (Id.)  Relevant here, the ALJ found that plaintiff's testimony regarding the intensity and

7    persistence of her symptoms was inconsistent with the medical and other evidence in the record.

8    (Id.)  To support his conclusions, the ALJ relied upon records that showed plaintiff's condition

9    generally well-controlled for unskilled light work and inconsistencies between plaintiff's

10   allegations and medical opinions.  (AT 20-24.)  Ultimately, the ALJ concluded at Step Four that

11   plaintiff was incapable of performing her past relevant work.  (AT 24.)  The ALJ, however, found

12   that plaintiff could perform other jobs existing in significant numbers in the national economy at

13   Step Five.  (AT 24-25.)

14   On July 26, 2018, the Appeals Council denied plaintiff's request for review, making the

15   ALJ's decision the final decision of the Commissioner.  (AT 1-6.)  Plaintiff then filed the present

16   action, requesting review of the Commissioner's final decision.  (ECF No. 1.)  The parties have

17   filed cross-motions for summary judgment.  (ECF Nos. 16, 22.)

18   **II.    LEGAL STANDARD**

19   The court reviews the Commissioner's decision de novo, and should reverse "only if the

20   ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ

21   applied the wrong legal standard."  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).

22   Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such

23   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

24   Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for

25   determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.

26   The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one

27   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, the

28   court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F.3d at 1048.

1    III.    **ISSUES PRESENTED**

2         Plaintiff raises three points of error: (A) that the ALJ erred at Step Two by failing to

3    consider her dyslexia "severe" and later failing to consider the disorder in her RFC; (B) that the

4    ALJ improperly discounted her subjective pain testimony; and (C) that the ALJ erred by not

5    developing the VE's testimony.  The Commissioner responds to each point, asserting that the

6    ALJ's decision is free of legal error and supported by substantial evidence.  The Commissioner

7    therefore argues that the ALJ's decision should be affirmed.

8    IV.    **DISCUSSION**

9         **A.  Any error at Step Two was harmless.**

10        Plaintiff first argues that the ALJ erred by failing to consider her dyslexia "severe" at Step

11   Two and that the ALJ did not properly consider the disorder when formulating plaintiff's RFC.

12        Under the Commissioner's regulations, an impairment or combination of impairments is

13   deemed to be severe at Step Two if it "significantly limits [a claimant's] physical or mental

14   ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit

15   Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose

16   of groundless claims.  An impairment or combination of impairments can be found not severe

17   only if the evidence establishes a slight abnormality that has no more than a minimal effect on an

18   individual's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal

19   citations and quotation marks omitted).  An omission of a "severe" impairment at Step Two is not

20   prejudicial when an ALJ accounts for the impairment in formulating a plaintiff's RFC.  See Burch

21   v. Barnhart, 400 F.3d 676, 682 (9th Cir.2005) (finding an omission of a "severe" impairment at

22   Step Two not prejudicial where the ALJ proceeded to further steps in analysis and accounted for

23   impairments in RFC).  Additionally, the mere existence of an impairment is insufficient proof of a

24   disability, and "[a] claimant bears the burden of proving that an impairment is disabling."

25   Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (internal citation and quotations omitted).

26        In this case, even assuming the ALJ erred in Step Two for failing to account for plaintiff's

27   dyslexia at that step, such error was harmless.  See Tommasetti, 533 F.3d at 1038 (finding

28   harmless error when the error is "inconsequential to the ultimate nondisability determination")

1   (internal citation omitted).  The only way that the ALJ's failure to discuss plaintiff's dyslexia at

2   Step Two could have prejudiced plaintiff is if the limitations of the impairment were not

3   considered when determining plaintiff's RFC.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.

4   2007) (finding failure to list bursitis as an impairment at Step Two harmless where ALJ

5   adequately considered limitations posed by bursitis at Step Four).

6       Plaintiff contends that the ALJ's error was not harmless because the limitations from

7   plaintiff's dyslexia were not factored into plaintiff's RFC.  (ECF No. 16 at 20-23.)  However, in

8   determining plaintiff's RFC the ALJ specifically discussed plaintiff's diagnosis of dyslexia.  (AT

9   21, 22.)  After noting her diagnosis, the ALJ limited plaintiff to routine, repetitive tasks exercising

10   only simple work-related judgments and decisions, sufficiently accounting for plaintiff's

11   limitations.  (AT 20.)

12       Additionally, while plaintiff contends that this RFC does not sufficiently account for her

13   purported symptoms, there is substantial evidence in the record to support the ALJ's

14   determination, namely, opinions of examining and state-agency physicians that list her mental

15   impairments as mild and non-debilitative.  (See AT 624, 75, 89.)

16       Similarly, plaintiff's work history suggests that she was capable of performing jobs that

17   required at least moderate reading and comprehension.  For example, plaintiff worked as an office

18   manager at a medical office from 1998 to 2011.  (AT 60.)  The VE found that the closest

19   description to plaintiff's office manager work in the Dictionary of Occupational Titles ("DOT")

20   was secretarial work that requires reading and comprehension beyond plaintiff's claimed

21   limitations.  (See AT 60, citing  DOT No. 201.362-010, 1991 WL 671667 ("Language: Level 4 -

22   READING:  Read novels, poems, newspapers, periodicals, journals, manuals, dictionaries,

23   thesauruses, and encyclopedias.").)  Plaintiff, who was diagnosed with dyslexia in the fourth

24   grade, was capable of performing relevant work despite her alleged impairment, and there is no

25   indication in the record, and no argument put forward by plaintiff, that these specific limitations

26   have worsened over time.  Thus, plaintiff's ability to perform past work that required a level of

27   reading that she now claims to be incapable of supports the ALJ's conclusion.  Plaintiff's

28   argument that she is now disabled due to, and the ALJ failed to account for, her dyslexia is

5

1   without merit.  See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) ("[S]ubstantial evidence

2   indicated that [plaintiff's] condition . . . remained constant for a number of years and that her

3   back problems had not prevented her from working over that time.").

4        The ALJ therefore properly accounted for plaintiff's limitations posed by her dyslexia.

5   Accordingly, the court finds no prejudicial error at Step Two.

6        **B.  The ALJ did not err by discrediting portions of plaintiff's testimony.**

7        Plaintiff next argues that the ALJ did not provide clear and convincing reasons to discredit

8   her pain testimony.  (ECF No. 16 at 26.)  The undersigned disagrees.

9        In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

10  Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

11
12            To determine whether a claimant's testimony regarding subjective
              pain or symptoms is credible, an ALJ must engage in a two-step
13            analysis.  First, the ALJ must determine whether the claimant has
              presented objective medical evidence of an underlying impairment
              which could reasonably be expected to produce the pain or other
14            symptoms alleged.  The claimant, however, need not show that her
              impairment could reasonably be expected to cause the severity of
15            the symptom she has alleged; she need only show that it could
              reasonably have caused some degree of the symptom.  Thus, the
16            ALJ may not reject subjective symptom testimony . . . simply
              because there is no showing that the impairment can reasonably
17            produce the degree of symptom alleged.

18            Second, if the claimant meets this first test, and there is no evidence
              of malingering, the ALJ can reject the claimant's testimony about
19            the severity of her symptoms only by offering specific, clear and
              convincing reasons for doing so. . . .

20  Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

21  ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

22  be available for the asking[.]"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

23       "The ALJ must specifically identify what testimony is credible and what testimony

24  undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

25  693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

26  1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

27  "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

28  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

1   testimony from physicians and third parties concerning the nature, severity, and effect of the

2   symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

3   2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

4   1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

5   court "may not engage in second-guessing."  Id. at 959.  This court will uphold an ALJ's

6   credibility determination so long as it is supported by a valid rationale.  See Molina, 674 F.3d at

7   1115 (finding harmless error when ALJ provides one or more invalid reasons for disbelieving a

8   claimant's testimony, but also provided valid reasons that were supported by the record).

9        As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's

10   allegations of pain.  Indeed, the ALJ limited plaintiff to light work with certain limitations.  (AT

11   20.)  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her

12   symptoms and functional limitations, the ALJ provided sufficient specific, clear, and convincing

13   reasons for doing so.[3]

14        First, the ALJ found that plaintiff's symptoms were not consistent with the medical

15   evidence in the record, and that evidence showed that plaintiff's condition was controlled at least

16   to perform unskilled light work.  (AT 21)  Inconsistencies between a claimant's subjective

17   symptoms and medical evidence is a sufficient reason to discount a claimant's subjective

18   complaints.  See Ruiz v. Berryhill, 732 F. App'x 592, 595 (9th Cir. 2018) (finding that the ALJ

19   properly discounted a claimant's subjective symptoms where claimant's "allegations were

20   undermined by her objective medical record").  The ALJ made numerous references to medical

21   records and noted that the records were inconsistent with plaintiff's claim of total disability.  (See

22   AT 21; 399 (finding no significant central or neural foraminal narrowing); 530 (myelogram test

23   came back negative); 285 (finding that plaintiff had moderate restrictions for: bending and

24   stooping; carrying, moving, and handling objects; walking and moving around; and range of

25   _____

26   [3] The court also notes that contrary to plaintiff's assertion that the ALJ erred because he "failed to discuss all the evidence and opinions of record" (ECF No. 16 at 28), the ALJ is under no such

27   mandate.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every

28   piece of evidence'") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998)).

1    motion).)  These records are inconsistent with plaintiff's claims of disabling pain, and the ALJ

2    therefore did not err by using them as a reason to discount plaintiff's subjective testimony.

3            The ALJ also properly noted that plaintiff's activities were inconsistent with her

4    subjective testimony, and substantial evidence supports the ALJ's findings.  "While a claimant

5    need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a

6    claimant's testimony when the claimant reports participation in everyday activities indicating

7    capacities that are transferable to a work setting. . . .  Even where those activities suggest some

8    difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

9    that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112-13

10   (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly

11   considered claimant's ability to care for her own needs, cook, clean, shop, interact with her

12   nephew and boyfriend, and manage her finances and those of her nephew in the credibility

13   analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's

14   determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

15   occasionally care for his friend's child" was a specific finding sufficient to discredit the

16   claimant's credibility).

17           Here, the ALJ noted that plaintiff's records show that she was able to walk for thirty to

18   forty-five minutes before she felt pain, while she testified that she could walk no more than one-

19   hundred feet.  (AT 22, compare AT 43 with 849.)  The ALJ also noted plaintiff's testimony that

20   she "helped her husband with outside chores, went on a vacation and camping, traveled to Oregon

21   to visit [her] sister, and was driving her son to Chico, CA, daily, seven days a week, since the

22   alleged onset date."  (AR 22).  As the ALJ found, "[plaintiff's] rather extensive travel decisions

23   suggest that the alleged symptoms and limitations may be overstated."  (Id.)  This is a sufficient

24   reason to discount plaintiff's alleged limitations.  See Tommasetti, 533 F.3d at 1040 (finding

25   extensive travel to be a proper reason to discount a claimant's purported pain testimony).

26           Accordingly, the ALJ did not err in discrediting portions of plaintiff's testimony regarding

27   the intensity of her symptoms.

28   ////

1          **C.  The ALJ did not err at Step Five.**

2          In plaintiff's final point she argues that the ALJ erred at Step Five by failing to properly

3   develop the VE's testimony.  Specifically, plaintiff asserts that the ALJ should have addressed

4   "whether the 'simple routine repetitive tasks' limitation" was "consistent with the DOT."  (ECF

5   No. 16 at 31.)

6          At Step Five, "the Commissioner has the burden 'to identify specific jobs existing in

7   substantial numbers in the national economy that [a] claimant can perform despite [his] identified

8   limitations.'"  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir.2015) (quoting Johnson v. Shalala,

9   60 F.3d 1428, 1432 (9th Cir.1995)).  Based on the VE's testimony, the ALJ found that plaintiff

10  could perform work as an office helper, which requires a GED Reasoning Level of Two.[4]  (AT

11  25, citing DOT § 239.567-010, 1991 WL 672232.)  A GED Reasoning Level of Two, in turn,

12  contemplates an individual who can "[a]pply commonsense understanding to carry out detailed

13  but uninvolved written or oral instructions.  Deal with problems involving a few concrete

14  variables in or from standardized situations."  DOT App. C, § III, 1991 WL 688702.

15         The undersigned initially notes that the ALJ did not limit plaintiff to "simple, repetitive,

16  routine, unskilled work" as plaintiff asserts.  (See ECF No. 16 at 31.)  Rather, the ALJ found that

17  plaintiff "can perform routine repetitive tasks exercising only simple work-related judgments and

18  decisions[.]"  (AT 20.)  Thus, the ALJ limited plaintiff to simple work-related judgments, but

19  found that she could perform routine tasks.  (Id.)

20         In the present case, the VE testified that plaintiff could work as a general office clerk and

21  that there were 233,000 jobs nationally under that description.  (AT 25, 62-62.)  This is a

22  sufficient number of jobs for the ALJ to rely upon.  See, e.g., Gutierrez v. Comm'r of Soc. Sec.,

23

24  ────────────────────
    [4] The ALJ also found that plaintiff could perform two other jobs found in the national economy,
25  which required GED Reasoning Levels of Three and Four, respectively.  (AT 25.)  The
    undersigned does not address whether plaintiff's RFC conflicts with the requirements of these
26  occupations.  Because the ALJ included at least one occupation that does not conflict with
    plaintiff's RFC the court notes that any error by the ALJ in including the other jobs would be
27  harmless.  See Hernandez v. Berryhill, 707 F. App'x 456, 458-59 (9th Cir. 2017) (finding that any
    error in the ALJ's determination that plaintiff could perform two particular jobs was harmless
28  because he properly found that plaintiff could perform one job).

1   740 F.3d 519, 527-29 (9th Cir. 2014) (finding 2,500 jobs in California and 25,000 jobs nationally

2   to be a significant number of jobs).  Additionally, and more to plaintiff's point, the ALJ's

3   limitation to "routine repetitive tasks exercising only simple work-related judgments and

4   decisions" is not in conflict with the GED Reasoning Level Two parameters, above, and therefore

5   the ALJ did not err at Step Five.  See Massachi v. Astrue, 486 F.3d 1149, 1154 n.19 (9th Cir.

6   2007) (noting that an ALJ does not err for failing to ask about a conflict if the record shows there

7   is no conflict); see also Abrew v. Astrue, 303 F. App'x. 567, 569 (9th Cir. 2008) ("[T]here was no

8   conflict between the ALJ's step five determination that [the plaintiff] could complete only simple

9   tasks and the vocational expert's testimony that [the plaintiff] could do jobs . . . categorize[d] at

10  'Reasoning Level 2.'").

11       Plaintiff's comparison to Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996 (9th Cir.

12  2015), is unavailing.  (ECF No. 16 at 32.)  In Rounds, the Ninth Circuit remanded to determine if

13  a limitation of "one to two step tasks" was in conflict with the parameters of Level Two

14  reasoning.  807 F.3d at 1004.  The limitations in the present case are plainly not as restrictive as

15  those found in Rounds, and there is no conflict between the present limitations and the Level Two

16  parameters, discussed above.  Similarly, Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015), is

17  inapposite.  In Zavalin, the Ninth Circuit found that there was "conflict between the residual

18  functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."

19  Id. at 847.  Thus, the court in Zavalin was presented with an RFC that was more restrictive than

20  the present case and a higher level of reasoning.  Therefore, the cases cited by plaintiff do not

21  support reversal in this matter.

22       Accordingly, the undersigned finds that the ALJ did not err at Step Five when he found

23  that plaintiff could perform work that exists in the national economy.

24  **V.**    **CONCLUSION**

25       The court finds that substantial evidence exists in the record to support the ALJ's

26  conclusion that plaintiff is not disabled.  Buck, 869 F.3d at 1048.  Thus, judgment should be

27  issued in favor of the Commissioner.

28  ////

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (ECF No. 16) be DENIED;

2.      The Commissioner's cross-motion for summary judgment (ECF No. 22) be GRANTED;

3.      The final decision of the Commissioner be AFFIRMED, and judgment be entered for the Commissioner; and

4.      The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED

Dated:  July 9, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/2307.F&R

11